MELINDA HAAG (CABN 132612)
United States Attorney
ALEX G. TSE (CABN 152348)
Chief, Civil Division
VICTORIA R. CARRADERO (CABN 217885)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7181
Facsimile: (415) 436-6748
Email: victoria.carradero@usdoj.gov

Attorneys for the Department of Commerce

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF COMMERCE<br><br>Defendant. | No. C 12-3683 TEH<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT/REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: The Honorable Thelton E. Henderson<br>Dept: Courtroom 12, 19th Floor<br>Hearing Date: May 6, 2013<br>Hearing Time: 10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I. Introduction ...............................................................................................................................1

II. Defendant Properly Withheld Export License Application Data under FOIA Exemptions 3, 4, and 5 ............................................................................................................1

    A. Plaintiff's Arguments on Exemption 3 Fail: Exemption 3 Protects Confidential Export Licensing Information, Even During a Lapse in the EAA. ......................................................................................................................1

    B. Confidential Export Licensing Information is Protected by Exemption 4. .............6

    C. Exemption 5's Deliberative Process Privilege Protects License Officers' Notes and Interagency Discussions Regarding the Export License Applications. ..................................................................................................9

III. Defendant Conducted an Adequate Search for Records and Provided Sufficient Information to Allow the Court to Evaluate its Withholdings under Exemptions 3,4,and 5 ..................................................................................................................10

    A. Defendant Conducted an Adequate Search Based on the ECCNs and Regulatory Language that Plaintiff Specified. .......................................................11

    B. No Information is Reasonably Segregable and a Vaughn Index is not Required. ...............................................................................................................14

IV. Conclusion ...............................................................................................................................15

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH


# TABLE OF AUTHORITIES
## FEDERAL CASES

*Newport Aeronautical v. Dept. of the Air Force*, 684 F.3d 160 (D.C. Cir. 2012) ...................... 2, 4

*Assassination Archives & Research Ctr. Inc. v. CIA,* 720 F.Supp. 217 (D.D.C. 1989) .............. 13

*Binion v. U.S. Dep't of Justice,* 695 F.2d 1189 (9th Cir. 1983) ...................................................... 15

*Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 384 F. Supp. 2d 138 (D.D.C. 2005) .......... 10

*Freedom Watch v. CIA*, 2012 WL 4753281 (D.C. Cir. 2012) ................................................. 13, 14

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770 (D.C. Cir. 1981) ............................................ 11

*Irons & Sears*, 606 F.2d 1215 (D.C. Cir. 1979) ............................................................................. 2

*Founding Church of Scientology v. Bell*, 603 F.2d 945 (D.C. Cir. 1979) .................................... 15

*Kim v. U.S. Dep't of the Interior*, 859 F.Supp.2d 13 (D.D.C. May 7, 2012) ................................ 13

*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) ........................................................................ 13

*Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009)...................................................... 11

*Lawyers' Comm. v. U.S. Dep't of Treasury,* 534 F. Supp. 2d 1126 (N. D. Cal. 2008) ................ 11

*Lewis v. IRS*, 823 F.2d 375 (9th Cir. 1987) ................................................................................... 15

*Lion Raisins Inc., v. USDA*, 354 F.3d 1072 (9th Cir. 2004) ........................................................... 8

*Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993) ............................................................................ 11

*National Security Counselors v. CIA*, 2012 WL 4903377 (D.D.C. Oct. 17, 2012) ........................................................................................................................................ 14

*Oglesby v. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990) ...................................................... 11

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ........................................................................... 11

*Rodriguez v. McLeod*, No. F-08-0184, 2008 U.S. Dist. LEXIS 104676 (E.D. Cal. 2008) ........................................................................................................................................ 11

*Rosenfeld v. U.S. Dep't of Justice*, No. C 07-3240, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) ................................................................................................................................ 11

*SafeCard Servs. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ........................................................... 11

*Times Publ'g Co., v. U.S. Dep't of Commerce*, 236 F.3d 1286 (11th Cir. 2001) ............... 2, 3, 4, 5

*United States v. Guo,* 634 F. 3d 1119, 1122 (9th Cir. 2011) .........................................................5

*Watkins v. Bureau of Customs*, 643 F.3d 1189 (9th Cir. 2011) ..................................................... 7

*Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344 (D.C. Cir. 1983) ........................................... 11

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ............................................................................... 14

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

ii

*Wisconsin Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275 (D.C. Cir. 2003) ................................................................................................ 2, 3, 4, 5, 6

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ........................................................................ 11

**FEDERAL STATUTES**

15 C.F.R. § 742.13 ............................................................................................................. 8, 13, 14

50 U.S.C. § 1701 ........................................................................................................................... 6

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

iii

I.      Introduction

As Defendant's opening brief explained, the export license application information at issue in this case is protected from disclosure by Exemptions 3, 4, and 5 of the FOIA.  Exemption 3, which incorporates the nondisclosure provisions of other federal statutes, was properly invoked because Section 12(c) of the EAA mandates the withholding of export license application information.  Exemption 4 was properly invoked because the export license application case files contain confidential commercial information, disclosure of which would cause substantial harm to the competitive position of the companies providing it and would impair the government's ability to obtain necessary information in the future.  And Exemption 5 was properly invoked because the license officer's notes and interagency communications concerning the export license applications at issue here are protected by the deliberative process privilege.  Plaintiff's response brief – which relies entirely on poorly-reasoned arguments in an overturned district court case, a dissenting appellate opinion, and district court *dicta* that was rejected on appeal, and which barely acknowledges the uniform operative case law and fails to contradict Defendant's evidence – offers nothing to support a contrary result.[1]  Summary judgment should be granted in favor of Defendant.

II.     **Defendant Properly Withheld Export License Application Data under FOIA Exemptions 3, 4, and 5**

   A.   **Plaintiff's Arguments on Exemption 3 Fail:  Exemption 3 Protects Confidential Export Licensing Information, Even During a Lapse in the EAA.**

As Defendant explained it its opening brief, Congress expressly provided that, when the EAA statute goes into "lapse," the IEPPA statute authorizes its extension by Executive Order.  In so doing, Congress created a unique statutory framework to continue uninterrupted the export control system of the EAA and maintain the confidentiality of export license application data

---

[1] As discussed further *infra*, Plaintiff failed to address numerous issues raised in Defendant's moving brief, as well as many of the cases cited therein, and also failed to demonstrate that any material factual dispute exists pertaining to the evidence that Defendant submitted.  Defendant objects to any attempt by Plaintiff to cure these defects on its reply because such matters should have been addressed in Plaintiff's responding brief and addressing the issues at this late juncture deprives Defendant of an opportunity to respond.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

1

thereunder. It is Section 12(c) of the EAA, as extended pursuant to the IEEPA, that forms the basis of Defendant's Exemption 3 claim. The invocation of Exemption 3 during periods of EAA lapse to withhold export license application information has been upheld by every jurisdiction that has had occasion to consider it.

In support of its effort to obtain documents that Congress clearly intended to be kept confidential, Plaintiff raises several arguments. First, Plaintiff urges this Court to adopt the same "overly technical and formalistic" approach that has now been universally rejected, namely, that only "a" statute, as opposed to a collection of statutes, can satisfy Exemption 3. *See Wisconsin Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275, 283 (D.C. Cir. 2003) (rejecting invitation "to hold that Congress must act by a single statute if its legislation is to qualify as a withholding statute under Exemption 3"); *Times Publ'g Co., v. U.S. Dep't of Commerce*, 236 F.3d 1286, 1292 (11th Cir. 2001) (same). *Accord Newport Aeronautical v. Dept. of the Air Force,* 684 F.3d 160, 168 (D.C. Cir. 2012). But as the D.C. Circuit explained, "Exemption 3 contemplates withholding pursuant to 'clearly delineated statutory language,' a phrase that admits of more than a single statutory source." 317 F.3d at 283.[2]

The reason Exemption 3 requires a statutory foundation is to ensure that "Congress, not the agencies of the Executive Branch, determine[s] the need for nondisclosure. . .
> 'Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public. On the contrary, Congress intended exemption from the FOIA to be a legislative determination and not an administrative one.'"

*Id.* at 280 (*quoting Irons & Sears*, 606 F.2d 1215, 1220 (D.C. Cir. 1979)). The congressional determination of the need for nondisclosure here, set forth in the operative language of Section 12(c) of the EAA, does not vary during lapse and non-lapse periods. And, irrespective of whether it is effective through the EAA itself or through the IEEPA, the confidentiality

---

[2] Even if the EAA were deemed to require a "single statutory source" of exemption, the statute that mentions exempting export license application information from disclosure is Section 12(c) of the EAA. It is immaterial for FOIA purposes whether that statute remains effective by virtue of a second statute or by virtue of a downstream expiration date.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

requirement of the EAA is, and always has been, "a legislative determination and not an administrative one." *Id.* *See Wisconsin Project* at 283 (noting that EAA and IEEPA "do not afford [the President] cart[e] blanche to withhold any information he pleases."). Where, as here, "*Congress* has made plain its intention to exclude the information sought by [plaintiff] from public disclosure under FOIA, the purpose of Exemption 3 – to ensure that 'basic policy decisions on governmental secrecy are made by the Legislative Branch rather than the Executive Branch' – is satisfied." *Times Publ'g,* 236 F.3d at 1292 (emphasis added).

As the Courts recognize, it is the "comprehensive legislative scheme as a whole – the confidentiality provision of the EAA, the intended and foreseen periodic expiration of the EAA, and the Congressional grant of power to the President to prevent the lapse of its important provisions during such times – [that] exempts from disclosure the export licensing information requested. . . ."[3] *Wisconsin Project*, 317 F.3d at 284 (*quoting Times Publ'g*, 236 F.3d at 1292). Accordingly, during a lapse period, *both* the EAA and the IEEPA function as Exemption 3 statutes, for it is these statutes acting in concert that authorize the withholding of export license application information under FOIA. *See Wisconsin Project*, 317 F.3d at 284 ("…IEEPA qualifies as an Exemption 3 statute…"); *Times Publ'g*, 236 F.3d at 1289 ("Section 12(c) of the EAA clearly qualifies as an exemption statue for purposes of FOIA Exemption 3…").

Second, Plaintiff argues that the *Times Publishing* and *Wisconsin Project* decisions are inapposite because Congress re-enacted the EAA during the pendency of those cases. Pl. Br. at 13. However, neither the 11th Circuit in *Times* nor the D.C. Circuit in *Wisconsin* relied on the re-enactment of the EAA to justify withholding export license application data, and their reasoning makes clear that their holdings would be no different had there been no re-enactment. Indeed, the D.C. Circuit recently clarified that its *Wisconsin Project* holding was premised upon the "unique statutory framework created by Congress to retain the confidentiality of export data" – not upon the re-enactment of the EAA. *Newport Aeronautical*, 684 F.3d at 168. That is why,

---

[3] Notwithstanding Plaintiff's insinuation that "legislative scheme" is a meaningless term coined by the Defendant (Pl. Br. at 8), the cases make clear that a "legislative scheme" is simply a collection of statutes.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

3

despite the fact that the EAA had been in a lapse period at the time of the *Wisconsin Project* FOIA request, the Court felt no need to address the retroactivity issue after the EAA was re-enacted. *Wisconsin Project*, 317 F.2d at 284-85 ("because IEEPA qualifies as an Exemption 3 statute, there can be no retroactivity problem"); *accord Times Pub'g*, 236 F.3d at 1292. Moreover, as noted in Defendant's moving brief, *Times* and *Wisconsin* are hardly the only cases to support the withholding of records under 12(c) during lapse periods. *See* Def. Br. at 11.[4]

Similarly, the congressional statements during the re-enactment that Plaintiff points to as evidence of Congress' "recognition" that export data was not protected during a lapse, Pl. Br. at 13-14, were made in response to the subsequently reversed district court order in *Times Publishing* releasing those documents. *See* 146 Cong. Rec. H8022 (daily ed. Sept. 25, 2000)(statement of Rep. Gilman)(citing "a recent court ruling" as necessitating re-enactment of the EAA to protect export license data). Plaintiff's attempt to portray Congress's legitimate concern over a flawed judicial decision as some kind of acquiescence in the result deserves no weight.

Plaintiff also contends that, even if a statutory scheme could qualify as an Exemption 3 statute, when the EAA lapses "the only comprehensive scheme that remains in place for regulating exports is a non-statutory, administrative one." Pl. Br. at 1. Plaintiff is incorrect. The President's executive order continues not only the Department's regulations *but also the statutory provision of 12(c)*. *See Newport Aeronautical Sales*, 684 F.3d at 168 (the executive order at issue in Wisconsin Project "*continued precisely* the [confidentiality] provision originated and written by Congress.") (emphasis in original); *Times Publ'g*, 236 F.3d at 1291 ("*the Act* remains effective by virtue of a presidential order during periods of statutory lapse.") (emphasis

---

[4] Plaintiff's attempt to analogize the *Times* and *Wisconsin* holdings with the "text light" approach rejected in *Milner* stretches the *Milner* holding beyond all reason. In *Milner*, the Supreme Court held that Exemption 2 – which protects materials "related solely to the internal personnel rules and practices of an agency" – could not be read to authorize the withholding of explosives data and maps. It is absurd to suggest, as Plaintiff does, that this means Exemption 3 -- which protects only matters specifically exempted from disclosure "by statute" -- cannot be read to protect matters specifically exempted from disclosure by a statutory scheme.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

4

added).  Similarly, Plaintiff attempts to characterize the extensive case law in which courts have imposed criminal penalties for violations that occur during a lapse of the EAA as upholding convictions under the *export regulations* alone and as insignificant.  Pl. Br. at 18-19.  Again, Plaintiff is simply wrong.  *See, e.g., United States v. Guo*, 634 F. 3d 1119, 1122 (9th Cir. 2011) (upholding conviction under 50 U.S.C. § 1705 for attempting to export dial-use item without required license) and other cases cited at Def.'s brief pp. 17-18.

Finally, Plaintiff takes issue with the proposition that Congress intended its statutory export control system to protect export license application data during periods of EAA lapse.  Contrary to Plaintiff's claims in this regard, the numerous lapses in the EAA are not signs of Congress's "ambivalence" towards the EAA's confidentiality provision, but a function of Congress' decision not to make the EAA permanent because "such important regulatory legislation should be periodically reviewed."  *Wisconsin Project,* 317 F.3d at 282.  As the D.C. Circuit made clear, "[i]n allowing the EAA to lapse from time to time, Congress has focused on a series of difficult and controversial questions having, so far as we are aware, *nothing to do with its expectation that export data would remain confidential.*"  *Id*. at 283 (emphasis added).  To the contrary, Congress' "enactment of IEEPA and its knowledge of a pattern of consistent lapse-filling by executive order [evidence its] express desire [to] hold export application information in confidence."[5]  *Id*.  Indeed, as recently as two months ago, Congress reiterated by statute that the EAA's provisions during lapse are "continued in effect pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.)"  *See e.g.,* Pub. L. 112-239, National Defense Authorization Act for Fiscal Year 2013, 112th Congress, Section. 1242(a)(6).

---

[5] Given these assertions, it is ironic that Plaintiff purports not to see any relevance in the actions of Congress and other concerned entities during periods of lapse.  Pl. Br. at 17-19 (discussing Def. Br. at 15-18).  In any event, the Courts do.  *See Times Publ'g* at 1291 (significant that "Congress [has] acted in accordance with the continued confidentiality of such information during those times of lapse"); *Wisconsin Project* at 282 ("significant for purposes of determining legislative intent that Congress acted with the knowledge that the EAA's export regulations had long provided for confidentiality and that the President's ongoing practice of extending the EAA by executive order had always included these confidentiality provisions.").

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

5

In short, Plaintiff's "unduly strict reading of Exemption 3 . . . strangles Congress's intent and deprives the exemption of meaningful reach in the context of the export regulatory scheme," thus producing absurd results. *Wisconsin Project* at 283-284. Congress did not intend that the confidential licensing information it took pains to protect in Section 12(c) of the EAA be publicly disclosed every time the EAA enters a lapse period – while the rest of the export control license system continues to operate intact. *See id*. Moreover, an "overly technical and formalistic reading of FOIA to disclose information clearly intended to be confidential [undermines] the Supreme Court's direction that the FOIA exemptions are to be given meaningful reach and application." *Times Publ'g* at 1292. It is well established that, absent compelling evidence to the contrary, a court will not impute to Congress an intent to reveal sensitive information that is specifically exempted from disclosure by statute. *See Wisconsin Project* at 283 (*citing Irons & Sears* at 1220-21). There is no such evidence here.

As the D.C. Circuit concluded in *Wisconsin Project*, the approach urged by Plaintiff "is attractive in its simplicity, [but] fails to come to grips with the statutory scheme Congress has erected for export data." 317 F.3d at 283. Accordingly, it must be rejected.

**B.     Confidential Export Licensing Information is Protected by Exemption 4.**

Plaintiff's attempts to challenge Defendant's withholding of information under Exemption 4 is also ineffective. First, Plaintiff contends that certain categories of information – including the name of the exporter, the model of the item to be exported, and information contained in the "additional information" field of the case files (which, as explained at Albanese Dec. ¶ 38, allows exporters to expand on the information provided elsewhere in the application and often includes technical details about the item being exported, its end use, etc.) – are not "commercial or financial" in nature and therefore do not qualify for withholding under Exemption 4. Pl. Br. at 24. On the contrary, as Defendant has already explained, courts have explicitly identified such details as "commercial or financial" for purposes of Exemption 4. Def. Br. at 22-23. The only case that Plaintiff cites to support its argument – the D.C. district court

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

6

case of *Green v. DOC* – is unpersuasive when the Ninth Circuit has held that an exporter's identity qualifies for withholding under Exemption 4. *See Watkins v. Bureau of Customs,* 643 F.3d 1189, 1195 (9th Cir. 2011) (holding that name of exporter, among other information, is "plainly commercial" for purposes of withholding under Exemption 4).[6]

Next, Plaintiff conclusorily asserts that even if such information is commercial or financial, it is not "confidential" under the *National Parks* test because it would neither impair the Government's ability to obtain necessary information in the future, nor cause substantial harm to the competitive position of the submitter. Pl. Br. at 25. Again, Defendant has already provided evidence to the contrary on both counts, which Plaintiff does not contradict. Def's Br. at 23-24.

Eileen Albanese and Dr. Paul Freedenberg have both testified to the substantial competitive harm that exporters would suffer if their confidential commercial information were to be made public. Albanese Dec. ¶¶ 41-42, Freedenberg Dec. ¶ 10. Both declarants draw on years of personal knowledge and experience working with the export community and, as discussed *infra*, their affidavits must be accorded a presumption of good faith. Nevertheless, Plaintiff conveniently ignores Ms. Albanese's testimony and attempts to undermine Dr. Freedenberg's declaration by questioning his familiarity with the technology at issue in the withheld records, stating that "it seems particularly unlikely that these disparate markets [i.e., the markets for technologies that intercept or block communications] could be described and expounded upon by a single declarant." Pl. Br. at 26. But this unsupported assertion is irrelevant. As already discussed, BIS does not regulate items for their blocking capabilities, and therefore these types of items were not included in the responsive records at issue. Rather, the

---

[6] Plaintiff makes much of the fact that, in *Lessner*, the Ninth Circuit addressed the propriety of withholding an exporter's identify as confidential commercial information under Exemption 4 in dicta only. Pl. Br. at 24, fn. 16. However, Plaintiff fails to recognize the Ninth Circuit's subsequent holding in *Watkins* that the identity of the exporter may be properly withheld under Exemption 4.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

7

withheld records deal with surreptitious listening technology and devices as regulated by 15 C.F.R. 742.13 (communications interception devices).

As Dr. Freedenberg attests in his supplemental declaration (attached here), the market for surreptitious listening technology is quite narrow and competition within that market is fierce. Freedenberg Supp. Dec. ¶ 2. The primary end users of the products are very limited in number and so the purchasers of these goods for export are a well-known, defined population. *Id.* If an exporter's license application were released to the public, competitors could use the information it contained to identify potential customers for particular products and to price their exports so as to undercut other market participants. *Id.* For this reason, disclosure of the information withheld in this case would cause substantial competitive harm to the exporters who submitted it. *Id.* ¶1.

Dr. Freedenberg's extensive experience dealing with high technology sector export concerns at ICOTT, MK Technology, the Association for Manufacturing Technology, and the former Export Administration (now the Bureau of Industry and Security), Freedenberg Dec. ¶ 1-6, and Ms. Albanese's years of experience working with the exporting community, first as the Director of the Office of Exporter Services and later as the Director of the Office of National Security and Technology Transfer Controls, Albanese Dec. ¶ 1-5, make them both sufficiently knowledgeable and qualified to speak to the competitive marketplace in which exporters' operate, the confidential commercial nature of the information at issue, and the harm that would come from disclosure of the information, both to the exporters as well as to the government. *Lion Raisins Inc., v. USDA*, 354 F.3d 1072, 1079-81 (9th Cir. 2004) (Agency declarant sufficiently knowledgeable where position he held for eight years made him knowledgeable about the marketing order at issue and had almost daily contact with relevant third parties. "More importantly, [declarant's] conclusions are supported by detailed and specific descriptions of each category of information included on the [withheld documents] and the ways in which each category of information could be turned to [a] competitive advantage." Citing *Bowen v. U.S.*

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

8

*Food & Drug Admin.,* 925 F.2d 1225, 1227 (9th Cir.1991) (holding that affidavits that described documents withheld, the statutory exemptions claimed, and the specific reasons for the agency's withholding provided adequate factual basis for application of "trade secrets" exemption)). Plaintiff has offered nothing to contradict either declarant's personal knowledge or experience that release of the exporters' confidential commercial information would cause the exporters substantial competitive harm.

Next, Plaintiff conclusorily asserts that since exporters are *required* to submit export license applications to BIS in order to export a controlled item, disclosure of the information would not impair the Government's ability to collect such information in the future. Pl. Br. at 25. However, as Ms. Albanese has already explained, only a portion of the fields in the export license application are required to be completed, and those fields are completed with varying degrees of thoroughness. Albanese Dec. ¶ 38-39. Defendant relies on the (often detailed) additional information *voluntarily* submitted by exporters in order to make informed decisions about whether a particular license should be granted or denied. *Id*. ¶ 39. If exporters knew that their sensitive commercial information were subject to disclosure, they would be reluctant to provide the additional details on which Defendant relies to maintain effective export controls, *Id*. ¶ 43, thus impairing Defendant's ability to collect such information in the future. *See also* Freedenberg Decl., ¶ 11.

In short, Plaintiff fails to address the operative case law authorizing withholding of the export license application information at issue here, and gives short shrift to the overwhelming, uncontroverted evidence that disclosure of this information would not only cause substantial harm to the competitive positions of the exporters submitting the information, but would also impair the government's ability to collect such information in the future. Plaintiff has done nothing to demonstrate that such information is subject to disclosure under FOIA.

  **C.**  **Exemption 5's Deliberative Process Privilege Protects License Officers' Notes and Interagency Discussions Regarding the Export License Applications.**

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

9

Plaintiff's attempts to discredit Defendant's withholding of license officer's notes and interagency discussions under Exemption 5 are equally weak. As discussed in Defendant's moving brief, Exemption 5's deliberative process privilege applies to license officer's notes and interagency communications concerning the export license applications because they are predecisional to the granting or denying of an export license and reflect the license officer's impressions, the agencies consulted, and their respective recommendations. Def. Br. at 24-27. Plaintiff offers nothing to controvert the case law cited in Defendant's moving brief that supports the withholding of such information under Exemption 5. *Id.*

Instead, Plaintiff notes that, even if a document is protected by the deliberative process privilege at the time it is prepared, the document can lose that status if it is adopted, formally or informally, as the agency position on an issue. Pl. Br. at 26. This statement, however, is irrelevant, as export licenses do not incorporate by reference either the BIS license officer's notes or interagency discussions about the application. Next, Plaintiff notes that any factual material contained in the withheld documents that does not reveal the deliberative process is not protected by exemption 5. Pl. Br. at 27. However, courts have held that factual material may be withheld under Exemption 5 when it is so intertwined with deliberative material that it cannot be meaningfully segregated and released. *See*, *e.g.*, *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 384 F. Supp. 2d 138, 151-52 (D.D.C. 2005). To the extent that any factual material contained in the withheld case files is not so inextricably intertwined with deliberative license officer's notes and input from other reviewing agencies, the factual material would still be protected by Exemptions 3 and 4, and therefore could not be released to the requester. Therefore, Plaintiff's argument that Defendant's withholdings under Exemption 5 are "broader than the law allows" is without merit.

///

**III.    Defendant Conducted an Adequate Search for Records and Provided Sufficient Information to Allow the Court to Evaluate its Withholdings under Exemptions 3, 4, and 5**

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

10


### A. Defendant Conducted an Adequate Search Based on the ECCNs and Regulatory Language that Plaintiff Specified.

Plaintiff's claim that Defendant conducted an inadequate search for records is also without merit. On summary judgment in a FOIA case, an agency need only show that "it has conducted a search reasonably calculated to uncover all relevant documents," *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*, 767 F.2d at 571)), "not [that] it actually uncovered every document extant." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)(citing *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1357 (D.C. Cir. 1983)). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). This showing may be made by "reasonably detailed, nonconclusory declarations submitted in good faith," *Lahr,* 569 F.3d at 986, describing "what records were searched, by whom, and through what processes." *Lawyers' Comm. v. U.S. Dep't of Treasury,* 534 F. Supp. 2d 1126, 1131 (N. D. Cal. 2008)(quoting *Weisberg*, 705 F.2d at 1344). Such declarations are accorded a presumption of good faith, "which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The agency need not "set forth with meticulous documentation the details of an epic search for the requested records." *Id.* (quoting *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982)). Further, the agency need not search "every record system" to locate documents or "engage in a vain search where it believes responsive documents are unlikely to be located." *Rosenfeld v. U.S. Dep't of Justice*, No. C 07-3240, 2010 WL 3448517, at *6 (N.D. Cal. Sept. 1, 2010) (quoting *Oglesby,* 920 F.2d at 68)). Once an agency has met its burden of demonstrating the adequacy of its search, its position can be rebutted only by showing that the agency's search was not made in good faith. *Rodriguez v. McLeod,* No. F-08-0184, 2008 U.S. Dist. LEXIS 104676, at *10 (E.D. Cal. 2008); *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

11

Here, Defendant conducted a thorough search for responsive records, as evidenced by the declaration of Eileen Albanese, who describes in great detail which offices within BIS were tasked with searching, which records were searched, and through what processes. Albanese Dec. ¶ 7-19. This declaration is entitled to a presumption of good faith, which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Plaintiff's claims to the contrary – i.e., that Defendant may have interpreted the request in an "unacceptably narrow manner" because it did not take into account two additional ECCNs not named in Plaintiff's original request – are just that: speculative. Neither example undermines the adequacy of Defendant's search.

First, Plaintiff cites ECCN 5A001.i, which applies to systems or equipment specially designed or modified to intercept and process the air interface of mobile telecommunications. Pl. Br. at 22. Plaintiff notes that this ECCN was only added to the category of regulated exports after Plaintiff submitted its FOIA request but speculates that Defendant may have previously regulated similar technology under another export category. But as Ms. Albanese explains, records now categorized under 5A001.i were formerly regulated under 5A980, Albanese Supp. Dec. ¶ 3, one of the categories named in Plaintiff's original FOIA request for which Defendant has already conducted a search for records. Albanese Dec. ¶ 10, 15.

Next, Plaintiff identifies ECCN 5A001.f – which regulates jamming equipment designed for mobile telecommunication services – as being potentially responsive to its request for records regarding devices or technology that "block" communications. Pl. Br. at 22-23. However, as Ms. Albanese explains, "jamming" and "blocking" are technologically distinct, Albanese Supp. Decl. ¶ 2, and while BIS regulates the export of jamming equipment, it does not regulate the export of technology for purposes of "blocking." *Id.* Moreover, if Plaintiff desired export license application documents for ECCN 5A0001.f, it could have asked for them at the time of its initial request – along with the three other ECCNs cited therein – but failed to do so.[7] While

---

[7] Plaintiff, as a sophisticated FOIA requestor, was capable of determining which ECCNs applied to the records it sought, as such information is available online in the EAR (which Plaintiff

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

12

agencies may be required to construe FOIA requests liberally, they are "not obligated to look beyond the four corners of the request" in searching for or releasing records, as Plaintiff demands here. *Kim v. U.S. Dep't of the Interior*, 859 F.Supp.2d 13, 20 (D.D.C. May 7, 2012) (citing *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996)). Rather, "It is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *Freedom Watch v. CIA*, 2012 WL 4753281, at *6 (D.C. Cir. 2012) (*citing Assassination Archives & Research Ctr.*, 720 F.Supp. 217, 219 (D.D.C. 1989). Litigation is not the appropriate forum for such clarification. *Freedom Watch v. CIA*, 2012 WL 4753281, at *7 (stating that, although Plaintiff was "willing to work with [d]efendants in order to further refine the portion of the FOIA request that [d]efendants have not been able to figure out…Clearly, this Court is not the proper venue for that process.").

Finally, Plaintiff condemns Defendant for tailoring its search to the two categories of records provided in Plaintiff's request, namely: "[a]ll export license applications classified under Export Control Classification Numbers 5A980, 5D980, and 5E980, including any records reflecting those license applications that were granted or denied;" and "[a]ll agency guidelines, policies, or analyses reflecting or concerning the types of systems, equipment and components, software, or technology that are "primarily useful for the surreptitious interception of wire, oral, or electronic communications." Pl. Br. at 22. Yet, without these two categories as a guide, Plaintiff's request for "all agency records, created from 2006 to the present, concerning the export of devices, software, or technology primarily used to intercept or block communications" is overbroad and fails to reasonably describe the records sought. *See Freedom Watch v. CIA*, 2012 WL 4753281 at *6 (holding that Plaintiff's requests for 49 categories of documents, including several that asked for "Any and all information that refers or relates to" specific *New*

---

presumably consulted in order to make its request wherein it specified three ECCNs and incorporated language from the surreptitious interception regulation, 15 C.F.R. 742.13). If Plaintiff now desires records relating to additional ECCNs, it must file another FOIA request for those records.

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

13

*York Times* articles, did not reasonably describe the records sought and thus were not proper requests). Taken alone, this portion of the request is ambiguous, as items "primarily used to intercept or block communications" are not terms defined under the EAR. Moreover, there is no reliable way for a BIS employee to search ECASS for such items without an ECCN. Albanese Supp. Decl. ¶ 1. For these reasons, Defendant appropriately relied on the two categories of records specified by the requester, *i.e.*, the three ECCNs and the language identified from the interception regulation 15 C.F.R. § 742.13, to shape the scope of its search. *See National Security Counselors v. CIA*, 2012 WL 4903377, at *31 (D.D.C. Oct. 17, 2012)(holding that FOIA permits agencies to consider the configuration of their record systems in deciding whether a FOIA request "'reasonably describes' the records sought"). Plaintiff's claims to the contrary – that, even if the FOIA requester cannot articulate what records it seeks, the agency should be able – and in fact is required – to fill in the blanks – is without merit.

### B. No Information is Reasonably Segregable and a Vaughn Index is not Required.

Because section 12(c) of the EAA protects all "information obtained for the purpose of consideration of, or concerning, license applications," and because the forty-five case files at issue in this litigation consist of nothing *but* information obtained for this purpose, Albanese Decl. ¶ 25, there was no information Defendant could segregate and release in response to Plaintiff's FOIA request. Nevertheless, Defendant has provided an exhaustive description of the documents withheld, Albanese Decl. ¶ 24, thus "afford[ing] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991).

Unsatisfied with the extensive detail Defendant has provided, Plaintiff demands a thorough accounting of the "contents" of the forty-five case files. Pl. Br. at 22. As discussed above, Defendant has already provided a detailed description of every field of information included in the withheld records, a fact that Plaintiff has ignored. To provide more detail about the *contents* of those fields would be to divulge the very information that is protected from

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

14

disclosure under 12(c). Defendants are not required to provide so much information in a FOIA case that they reveal the information sought to be withheld, as Plaintiff demands here. *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983) ("The government need not specify its objections in such detail as to compromise the secrecy of the information." Quoting *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979)). Nor is Defendant required to provide a *Vaughn* index, as Plaintiff claims. Pl. Br. at 21. Because the forty-five case files are identical in format, each containing the same fields, a *Vaughn* index's "document-by-document" description would be unnecessarily repetitive and would provide no additional information not already included in Defendant's moving brief. Other courts analyzing this very issue did so without a *Vaughn* index, and Plaintiff provides no reasonable justification for why one is needed here, given the extensive detail Defendant has provided about the withheld records and the restrictions on providing further detail due to Section 12(c). *See, e.g., Lessner, Times Publ'g, Wisconsin Project.* Where, as here, an entire class of documents is *per se* exempt from disclosure, regardless of content, a *Vaughn* index serves no purpose. *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987).

## IV. Conclusion

Defendant conducted a thorough search for records in response to Plaintiff's request and properly withheld forty-five export license application case files in full under Exemption 3. In addition, Defendant properly withheld portions of those case files under Exemptions 4 and 5. Plaintiff's arguments to the contrary are an attempt to re-litigate settled issues of law set forth in a plethora of legal authority supporting each of Defendant's withholdings. Accordingly, Defendant respectfully requests that its motion for summary judgment be granted and Plaintiffs' motion for summary judgment be denied.

Respectfully submitted,

MELINDA HAAG
United States Attorney

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH

15

Dated: March 28, 2013 _____/s/_____
Jonathan U. Lee for
Victoria R. Carradero
Assistant United States Attorney
Attorneys for Federal Defendant

OF COUNSEL:

LYDIA GRUNSTRA
Attorney Advisor
General Law Division
U.S. Department of Commerce
1401 Constitution Avenue NW
Washington D.C., 20230

Def.'s Opp. To Plf's Cross Motion/Reply
ISO Def.'s Motion for Summary Judgment
Case No. C 12-3683 TEH