Mark Rumold (SBN 279060)
*mark@eff.org*
Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No.: 12-cv-3683 TEH |
| Plaintiff, | **REPLY IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DEPARTMENT OF COMMERCE, | Date: May 6, 2013 |
| Defendant. | Tine: 10:00 a.m. |
| | Courtroom 12 – 19th Floor |
| | Hon. Thelton E. Henderson |

1

**TABLE OF CONTENTS**

2   INTRODUCTION...................................................................................................1

3   ARGUMENT .......................................................................................................2

4       I.      INSTEAD OF OFFERING ADDITIONAL SUPPORT FOR ITS
                EXTRAORDINARY WITHHOLDING CLAIMS UNDER EXEMPTION 3,
5               DEFENDANT SIMPLY RESTATES ITS ORIGINAL, UNAVAILING
                ARGUMENT ...........................................................................................2
6
        II.     IN THE ABSENCE OF PARTIALLY RELEASED RECORDS AND A
7               DOCUMENT-BY-DOCUMENT VAUGHN INDEX, IT IS IMPOSSIBLE FOR
                BOTH THE COURT AND EFF TO FULLY EVALUATE DEFENDANT'S
8               WITHHOLDINGS UNDER EXEMPTIONS 4 AND 5 ...........................................8

9               A.      Defendant Cannot Withhold Information that is Neither "Commercial or
                        Financial" Nor "Confidential" under Exemption 4......................................9
10
                B.      Records that Form the Basis for Agency Action Cannot Be Withheld
11                      Under Exemption 5 ...................................................................11

12      III.    DEFENDANT'S FAILURE TO SEARCH FOR RECORDS CONCERNING
                TECHNOLOGY USED TO "BLOCK COMMUNICATIONS" PREVENTED
13              THE AGENCY FROM CONDUCTING AN ADEQUATE SEARCH FOR
                RESPONSIVE RECORDS ...................................................................12
14
        CONCLUSION ...................................................................................................14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Federal Cases

3

*Coastal States Gas Corp. v. Dep't of Energy,*

4
    617 F.2d 854 (D.C. Cir. 1980) ...........................................................................11

5

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*

6
    447 U.S. 102 (1980) ..............................................................................................5

7

*Dames & Moore v. Regan,*
    453 U.S. 654, 101 S. Ct. 2972, 69 L.Ed.2d 918 (1981) .......................................7

8

*Green v. Dep't of Commerce,*

9
    468 F. Supp. 691 (D.D.C. 1979) ..........................................................................9

10

*LaCedra v. EOUSA,*
    317 F.3d 345 (D.C. Cir. 2003) ...........................................................................13

11

*Lion Raisins v. Dep't. of Agric.,*

12
    354 F.3d 1072 (9th Cir. 2004) ...........................................................................11

13

*McDonald v. Sun Oil Co.,*

14
    548 F.3d 774 (9th Cir. 2008) ...............................................................................3

15

*Micei Int'l v. Dep't of Commerce,*

16
    613 F.3d 1147 (D.C. Cir. 2010) ........................................................................6, 7

17

*Milner v. Dep't of the Navy,*
    562 U.S. __, 131 S. Ct. 1259 (2011) ....................................................................2

18

*Miranda v. Anchondo,*

19
    684 F.3d 844 (9th Cir. 2012) ...............................................................................3

20

*Nat'l Parks and Conservation Ass'n v. Morton,*
    498 F.2d 765 (D.C. Cir. 1974) ........................................................................9, 10

21

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.,*

22
    861 F.3d 1114 (9th Cir. 1998) ...........................................................................12

23

*Nation Magazine v. United States Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995) ........................................................................13, 14

24

25

*NLRB v. Sears,*
    421 U.S. 132 (1975) ............................................................................................11

26

*Satterfield v. Simon & Schuster, Inc.,*

27
    569 F.3d 946 (9th Cir. 2009) ...............................................................................3

28

ii

*Times Publishing Co. v. Dep't of Commerce,*
    236 F.3d 1286 (11th Cir. 2001)................................................................1, 2, 4

*United States v. Guo,*
    634 F.3d 1119 (9th Cir. 2011).............................................................5, 6, 13

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ............................................................1, 8, 14

*Watkins v. CBP,*
    643 F.3d 1189 (9th Cir. 2011)..................................................................9, 11

*Wisconsin Project on Nuclear Arms Control v. Dep't of Commerce,*
    317 F.3d 275 (D.C. Cir. 2003) ...............................................................1, 2, 7

**Federal Statutes**

15 C.F.R. § 742.13 ...........................................................................................10

15 C.F.R. § 774 Suppl. No. 1 (ECCN 5A001.f) ...............................................14

5 U.S.C. § 552(a)(3)(A) ...................................................................................13

5 U.S.C. § 552(b)(3)(A)(i) ..................................................................................2

5 U.S.C. § 552(b)(3)(A)(ii) .................................................................................2

5 U.S.C. § 552(b)(3)(B) ......................................................................................3

5 U.S.C.§ 552(b)(3)...................................................................................*passim*

5 U.S.C.§ 552(b)(4)...................................................................................*passim*

5 U.S.C.§ 552(b)(5)...................................................................................*passim*

50 U.S.C. § 1701 ..................................................................................................5

50 U.S.C. § 1702(a)(1)(B)....................................................................................7

50 U.S.C. § 1705(a)..............................................................................................5

**Legislative Materials**

146 Cong. Rec. H11576 (daily ed. Oct. 30, 2000) (statement of Rep. Lee) ......4

OPEN FOIA Act of 2009, Pub. L. No. 111-83 § 564, 123 Stat. 2142................3

50 U.S.C. App. § 2412(c)(3) ...............................................................................6

50 U.S.C. App. § 2419 .........................................................................................5

1

**Other Authorities**

2

*Merriam-Webster Collegiate Dictionary* (11th ed. 2003).................................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.: 12-CV-3683 TEH          REPLY IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR
SUMMARY JUDGMENT

**INTRODUCTION**

EFF's cross-motion demonstrated that the records at issue in this case cannot be withheld in their entirety under Exemption 3 of FOIA. When presented with the statutory backdrop present here, every district court to consider the issue has agreed with the position advanced by EFF: neither the lapsed EAA, IEEPA's broad grant of discretionary authority, executive orders, nor agency regulations, whether taken individually or in combination, satisfy Exemption 3's stringent statutory requirements. As EFF also showed, the Eleventh Circuit's decision in *Times Publishing Co. v. Dep't of Commerce*, 236 F.3d 1286 (11th Cir. 2001), and the D.C. Circuit's decision in *Wisconsin Project on Nuclear Arms Control v. Dep't of Commerce*, 317 F.3d 275 (D.C. Cir. 2003), came only *after* Congress reenacted the EAA, specifically to provide exemption for the records at issue in those cases. While Congress similarly is free to take such action here, it has not done so.

In response, Defendant simply repeats its original claims and reiterates its reliance on the factually distinguishable *Times Publishing* and *Wisconsin Project* cases. But the text of Exemption 3 is clear – withholding is only appropriate where there is another "statute" that satisfies the exemption's particular criteria. Defendant cannot point to such a statute in this case. Consequently, the requested records are improperly withheld in their entirety under Exemption 3.

Defendant's blanket Exemption 3 claims also obstruct both this Court and EFF from fully assessing Defendant's other obligations under FOIA, including whether information has been properly withheld under Exemptions 4 and 5. Nevertheless, and even without the document-by-document *Vaughn* index typically required in FOIA cases, Defendant's claims under Exemptions 4 and 5 appear broader than the law allows. Finally, Defendant construed EFF's FOIA request in an unacceptably narrow manner, thus omitting an entire category of records responsive to EFF's request. This improper narrowing resulted in an adequate search for responsive records.

EFF respectfully urges the Court to reject Defendant's unfounded claims of Executive authority, statutory interpretation, and withholding under Exemption 3; to order the release of the withheld records; and to order Defendant to conduct a subsequent search for responsive records.

1

**ARGUMENT**

**I.   INSTEAD OF OFFERING ADDITIONAL SUPPORT FOR ITS EXTRAORDINARY WITHHOLDING CLAIMS UNDER EXEMPTION 3, DEFENDANT SIMPLY RESTATES ITS ORIGINAL, UNAVAILING ARGUMENT**

EFF's cross-motion demonstrated that Defendant's Exemption 3 claims are unsupportable in light of the plain text of FOIA, basic canons of statutory construction, the overwhelming case law interpreting Exemption 3, the critical distinguishing characteristics of *Times Publishing* and *Wisconsin Project*, and the intent of Congress in reenacting the EAA in 2000. Pl. Mem. at 8-20. Exemption 3 means what it says: withholding under the exemption requires a *statute*, satisfying the particular criteria laid out in the exemption. In reply, Defendant does not – and, indeed, *cannot* – offer further argument or precedent supporting its claim. Defendant can only fall back to its original position, based on the factually distinguishable *Times Publishing* and *Wisconsin Project* decisions.

First, citing *Wisconsin Project*, Defendant describes as "overly technical and formalistic" Exemption 3's requirement to identify a "statute" that specifically exempts the records at issue from disclosure. Def. Rep. at 2 (citing *Wisconsin Project*, 317 F.3d at 283). But the text of Exemption 3 and basic principles of statutory interpretation compel this allegedly "technical and formalistic" requirement. The text of the exemption plainly applies to only those records "specifically exempted from disclosure by *statute*," if (and only if) that statute "leave[s] no discretion on the issue" of withholding, "establishes particular criteria for withholding," or "refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i),(ii) (emphasis added). There is no such statute here. Thus, the exemption does not apply.

Seeking to avoid FOIA's clear mandate, Defendant again reverts to its argument that a "legislative *scheme*" – consisting of a mixture of a decade-long expired statute, a broad grant of discretionary statutory authority, executive orders, and agency regulations – can satisfy Exemption 3's requirements. But such a "text-light" approach to FOIA is unsupported by basic principles of statutory interpretation. *See Milner v. Dep't of the Navy*, 562 U.S. __, 131 S. Ct. 1259, 1267 (2011) (rejecting Navy's interpretation of FOIA that relied on "cutting out some" words of

the statute and "pasting in others"). Indeed, "[t]he preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)). Defendant does not suggest that the text of Exemption 3 is in any way ambiguous: the text plainly requires a specific type of collateral statute. 5 U.S.C. § 552(b)(3). Defendant cannot point to such a statute here, and this, alone, settles the question of whether Exemption 3 applies in this case. *See Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) ("If the statutory language is unambiguous . . . judicial inquiry must cease.") (internal quotations and citations omitted).

If any doubt remained, in 2009 Congress reiterated that the "technical and formalistic" interpretation of Exemption 3 (which Defendant urges this Court to reject) is *precisely* the formulation Congress intends. The OPEN FOIA Act of 2009, Pub. L. No. 111-83 § 564, 123 Stat. 2142, 2184, amended Exemption 3 to further cabin the Executive's ability to invoke federal authority to withhold records. The amendment requires that, for any statute passed after 2009 and which Congress intends to serve as a withholding statute satisfying the exemption's requirements, that statute must "specifically cite[] to [Exemption 3]." 5 U.S.C. § 552(b)(3)(B). This amendment reinforces what Defendant refuses to acknowledge: Congress intends *statutes* – and only those statutes Congress *explicitly* authorizes – to serve as a basis for withholding under Exemption 3.[1] Congress did not intend Exemption 3 to give the Executive license to cobble together various pieces of federal authority to withhold records. Instead, properly construed, Exemption 3 is a narrowly circumscribed expression of Congress's desire to exempt records from FOIA when *Congress* – not the Executive – specifically and unambiguously determines the records should be withheld. Thus, although Defendant may dismiss it as "technical and formalistic," requiring the

---

[1] Indeed, were the EAA reenacted today, in order for its confidentiality provision to qualify as a withholding statute under Exemption 3, the provision would need to be amended to include an explicit reference the exemption. *See* 5 U.S.C. § 552(b)(3)(B).

existence of a valid statute to withhold records under Exemption 3 is precisely the interpretation Congress intended.

Second, Defendant argues that the legislative history of the EAA's reenactment in 2000 "deserves no weight." Def. Rep. at 3-4. As EFF demonstrated in its cross-motion, Pl. Mem. at 13-14, Members of Congress believed that, in the absence of a valid EAA, the Commerce Department could not withhold export records under FOIA. Pl. Mem. At 13-14 (citing 146 Cong. Rec. H11576 (daily ed. Oct. 30, 2000) (statement of Rep. Lee) (questioning the government's ability to "hide behind emergency powers to revive an expired law"). Further, the statute's reenactment in 2000 provided Commerce the authority to withhold records for only a limited period of time: according to Members of Congress, reenactment provided Commerce the ability to "protect the confidentiality of the relevant documents received since 1994, as well as the documents that the Commerce Department receives between [Oct. 30, 2000] and [August 20, 2001, the date of the EAA's expiration]." *Id*. The EAA's temporary reenactment did not, as Defendant argues, give the Commerce Department a perpetual statutory basis to withhold export records.

According to Defendant, however, these statements only reflect Congressional concern over the district court's "flawed" decision in *Times Publishing*. Def. Rep. at 4. To the contrary, nothing in the legislative history suggests that Congress disagreed with the district court's decision. Instead, and consistent with the purpose of Exemption 3, the EAA's legislative history reflects a recognition that, in the absence of a valid statute, the Courts will not allow the Executive to "hide behind emergency powers." 146 Cong. Rec. H11576 (daily ed. Oct. 30, 2000) (statement of Rep. Lee). If the export records were to be withheld, Congress recognized its action was needed. *See id*. ("We have got to pass [the EAA] to make sure [Commerce] can keep the information confidential.").

Moreover, Defendant's dismissal of actual *statements* reflecting the intent of Members of Congress is particularly suspect, especially where Defendant would have this Court give great weight to the interpretative value of the *implications* of Congressional action. *See, e.g.*, Def. Rep. at 5 n. 5. Where clear statements of Congressional intent are available, reliance on Congressional

actions taken after the EAA's temporary reenactment should be disregarded. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980) ("[S]ubsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and *legislative history prior to its enactment*.") (emphasis added).

Finally, Defendant again attempts to conflate the existence and validity of export *regulations*[2] with the existence and validity of an export regulation *statute*.[3] But the export regulations are entirely beside the point. As noted in Plaintiff's cross-motion, Pl. Mem. at 10-11, EFF readily concedes that IEEPA gives the President discretionary authority to regulate exports in times of national emergency; indeed, the President may delegate that power to other Executive Branch officials, and those officials may issue regulations pursuant to that delegated authority. But the existence of validly issued *regulations* says nothing where, as here, a *statute* is required.

Defendant again suggests that those cases upholding criminal convictions under the export regulations somehow demonstrate that the *EAA*, and its confidentiality provision, are in force. *See* Def. Rep. 2 n.5, 4-5. Defendant's reply cites *United States v. Guo*, 634 F.3d 1119, 1122 (9th Cir. 2011), as an apparent paradigmatic expression of this principle. But it is not at all clear what Defendant believes *Guo*, or any of the cases it cites concerning export violations, proves. Indeed, the expired EAA is not even mentioned in *Guo*. There, the court simply upheld, against a vagueness challenge, a conviction under 50 U.S.C. § 1705(a) for violation of export *regulations*. *See id*. at 1121-22.[4] Nothing at issue in this case implicates the decision in *Guo* or any of the other criminal cases cited by Defendant.

---

[2] As repeatedly noted, *see* Pl. Mem. at 10-12, the President has, pursuant to the broad, discretionary authority granted by IEEPA, extended export regulations originally issued under the EAA through a series of executive orders.

[3] The EAA *was* a comprehensive statutory basis for regulating exports, which also contained a provision for confidentiality. *See* Pl. Mem. at 4-6. However, the EAA lapsed in 2001. *See* 50 U.S.C. App. § 2419 ("The authority granted by this Act . . . terminates on August 20, 2001.").

[4] 50 U.S.C. § 1705(a) makes it unlawful for "a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, *regulation*, or prohibition issued under this chapter." (emphasis added). The Export Administration Regulations are "regulation[s]," issued pursuant to IEEPA, 50 U.S.C. § 1701.

Indeed, perhaps the most relevant case concerning violation of export regulations goes uncited in Defendant's papers. That case, *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147 (D.C. Cir. 2010), did not concern the authority to continue the regulations or the legitimacy of criminal penalties under those regulations; rather, *Micei* addressed whether IEEPA's broad grant of Executive authority included the power to vest initial review of export sanctions with the D.C. Circuit – a power that, like the authority to withhold records under Exemption 3, requires a *statutory* basis. *Micei*, 613 F.3d at 1151 ("[O]nly when a direct-review *statute* specifically gives the court of appeals subject-matter jurisdiction to directly review agency action may a party seek initial review in an appellate court.") (emphasis added; internal citations and quotations omitted). A provision of the expired EAA, 50 U.S.C. App. § 2412(c)(3), provided for direct appellate review of sanctions in the D.C. Circuit. *Id*. at 1151. In the absence of such a statute, the "normal default rule" provides initial review of agency action in federal district court. *Id*. (internal citations and quotations omitted). The question in *Micei*, then, was whether the EAA's expired provision, IEEPA, the executive orders, or export regulations provided the requisite statutory basis for direct appellate jurisdiction. *Id*.

The D.C. Circuit first found that, because the statute had lapsed, the EAA could not provide the authority for direct appellate review. *Id*. at 1152 (noting direct appellate review "provision expired with the rest of the EAA"), 1154.[5] After Commerce correctly conceded that the EAA no longer had force, the only remaining question was whether IEEPA (or the executive orders or regulations issued pursuant to IEEPA) provided the requisite statutory authority for direct appellate review. The D.C. Circuit held they did not:

> Nothing in the text of IEEPA delegates to the President the authority to grant jurisdiction to any federal court. Nowhere does the statute even refer to the jurisdiction of federal courts. It never mentions the direct-review provision of the expired EAA or, for that matter, the EAA itself. To be sure, "IEEPA delegates broad authority to the President." *Dames & Moore v. Regan,* 453 U.S. 654, 677,

---

[5] In contrast to Defendant's position in this case, in *Micei*, the Commerce Department rightly did "not argue[] that the executive order purports to maintain the EAA in effect beyond the statute's expiration." *Id*. at 1153; *compare id*. (conceding IEEPA does not continue the actual EAA statute), *with* Def. Rep. at 4 ("The President's executive order continues not only the Department's regulations *but also the statutory provision of 12(c).*").

101 S. Ct. 2972, 69 L.Ed.2d 918 (1981). That authority includes the power to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit" a wide array of transactions, 50 U.S.C. § 1702(a)(1)(B), authority that might very well permit the President to maintain many of the substantive provisions of the export regulations and the EAA. But these powers do not include the power to vest jurisdiction in the federal courts.

*Micei*, 613 F.3d at 1153-54; *cf*. Pl. Mem. at 10-11 ("'The text of IEEPA does not refer to particular criteria for withholding,' let alone refer to *any* criteria; it does not refer to 'particular types of matters to be withheld,' let alone refer to withholding at all.")

Just as IEEPA failed to provide a statutory basis for direct appellate review, so too does IEEPA fail to provide a statutory basis for withholding under Exemption 3. "Nothing in the text of IEEPA" even obliquely mentions Exemption 3 or its exacting requirements. *Id.* Indeed, "[n]owhere does [IEEPA] even refer to" withholding records at all. IEEPA "never mentions [the confidentiality provision] of the EAA or, for that matter, the EAA itself." *Id.* And, while the authority granted under IEEPA "might very well permit the President to maintain many of the substantive provisions of the export regulations," the "power to" withhold records under Exemption 3, like vesting direct appellate review, requires a statutory basis. *Id.* at 1153.[6]

All this leads to an inescapable conclusion: to withhold records under Exemption 3, Defendant must rely on a statute that satisfies the exemption's precise requirements. Indeed, every district court to consider the issue has agreed with EFF's position: As Judge Kessler noted, "[i]f Congress intended FOIA Exemption 3 to also cover those cases where there is no underlying statute in effect but where Congressional intent could be pieced together from other sources, it certainly knew how to draft language to state that expressly." Rumold Decl., Ex. B (*Wisconsin Project*, 99-cv-02673, ECF No. 35 (D.D.C. Sep., 4, 2001)). Instead of amending Exemption 3 to permit such a piecemeal approach, Congress chose the opposite course: since 2009, Congress has required withholding statutes to specifically reference Exemption 3 in the text of those statutes. This type of formality is wholly inconsistent with the interpretation of Exemption 3 advanced by Defendant. Consequently, its withholding claims under Exemption 3 should be rejected.

---

[6] The *Micei* court distinguished *Wisconsin Project* on the grounds that the *Wisconsin Project* decision "did not speak to Article III jurisdiction." *Micei*, 613 F.3d at 1157.

## II. IN THE ABSENCE OF PARTIALLY RELEASED RECORDS AND A DOCUMENT-BY-DOCUMENT *VAUGHN* INDEX, IT IS IMPOSSIBLE FOR BOTH THE COURT AND EFF TO FULLY EVALUATE DEFENDANT'S WITHHOLDINGS UNDER EXEMPTIONS 4 AND 5

Defendant's extraordinary Exemption 3 claims encompass all records at issue in this case. Because of the breadth of these claims, Defendant has not released a single withheld record in part, nor described any individual record with particularity. Indeed, at this stage, it is not even clear how many *pages* of records are at issue. *Compare* Declaration of Eileen Albanese ("Albanese Decl."), ¶ 24 (describing 45 *case files*), *with* ¶ 46 (describing 45 responsive *documents*). Nevertheless, Defendant concedes, as it must, that without its blanket Exemption 3 claims, the responsive records may not be withheld in their entirety. Def. Mem. at 20 (noting only "portions" of records withheld under Exemptions 4 and 5). However, because no records have been released in part and because Defendant has not provided a specifically tailored *Vaughn* index, both this Court and EFF are precluded from conducting a meaningful review of Defendant's other exemption claims.

Two examples illustrate the continuing obstacles this Court and EFF face in assessing Defendant's claims under Exemptions 4 and 5. First, the scope of Defendant's Exemption 4 claims remains unclear: Defendant only states that "portions of *certain* case files are being withheld" pursuant to Exemption 4. Albanese Decl. ¶ 34. Yet all files have been withheld in their entirety. Without some indication of which case files (or portions thereof) are being withheld under Exemption 4 and for what reasons, it is impossible to assess with any precision whether Defendant's claims are legitimate. Second, Defendant acknowledges that factual material exists within the records withheld under the deliberative process privilege. Def. Rep. at 10. Yet Defendant claims it need not segregate and release that information because the material is also withheld under Exemptions 3 and 4. Because Defendant claims that *all* information in *every* responsive record may be withheld under Exemption 3, it is impossible to separate and assess its claims under Exemptions 4 and 5 with any certainty.

Given this unusual posture, both Defendant and EFF agree that this Court should first evaluate the legitimacy of Defendant's Exemption 3 claims. Def. Mem. at 20; Pl. Mem. at 20. And, because Defendant's Exemption 3 claims are unavailing, EFF respectfully urges the Court to order

8

the production of responsive records with appropriate redactions (if any), and to order Defendant to provide a description of the particular information within each record and its justification for withholding. This procedure will allow the parties to further refine and narrow the issues in dispute and will conserve the resources of the Court and the parties moving forward.

Nevertheless, even in the absence of partially released records and particularly tailored descriptions of Defendant's withholdings, it is apparent that – for some information – Defendant's claims under Exemptions 4 and 5 are inadequately supported and far broader than the law allows.

A.    Defendant Cannot Withhold Information that is Neither "Commercial or Financial" Nor "Confidential" under Exemption 4

Defendant continues to claim that wholly generic information like the name of an exporter constitutes "confidential" commercial or financial information within the meaning of Exemption 4. In response to case law holding directly to the contrary, *see Green v. Dep't of Commerce*, 468 F. Supp. 691, 694 (D.D.C. 1979), Defendant claims that *Watkins v. CBP*, 643 F.3d 1189 (9th Cir. 2011), holds that the "identity of the exporter may be properly withheld under Exemption 4." Def. Mem. at 7, n. 6. The records in *Watkins*, however, dealt with the *importation* of goods into the United States. There, the court permitted the withholding of *foreign* exporter information because it could reveal "supply chains and fluctuations of demand for merchandise." *Id*. at 1195. Notably, there is no indication in *Watkins* that the identities of *importers* – that is, the American companies whose foreign supplier information was determined to fall within Exemption 4 – received similar treatment. *See id*. Thus, contrary to Defendant's assertion, the case hardly establishes a rule that the identities of exporters are "plainly commercial."

But even setting aside whether the withheld information is "commercial or financial," in order to properly invoke Exemption 4, Defendant must still show that all information is "confidential" within the meaning of the *National Parks* test. *See* Pl. Mem. at 24-25 (citing *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). As noted in EFF's cross-motion, Defendant cannot show that disclosure would impair the government's ability to obtain the information in the future, because – so long as exporters wish to continue exporting

9

goods – those exporters are *required* to submit the information. Pl. Mem. at 25. Defendant responds that export applications are submitted with "varying degrees of thoroughness" and that Defendant relies on "the (often detailed) additional information" provided by exporters. Def. Rep. at 9. But this is no response. Because the applications are required, the government has a simple solution to this dilemma: reject those applications that are insufficiently detailed. So long as companies wish to continue exporting goods, disclosure will not impair the government's ability to obtain the information in the future.

Similarly, Defendant has failed to satisfy the second prong of the *National Parks* test – to show that disclosure would result in "substantial harm to the competitive position" of export applicants. *National Parks*, 498 F.2d at 770. The submission of the supplemental Freedenburg Declaration does not cure this defect. EFF's cross-motion demonstrated that Defendant had failed to identify the relevant markets at issue in the export of "surreptitious listening technology." Pl. Mem. at 24-25; *see also* Supplemental Declaration of Dr. Paul Freedenburg ("Supp. Freedenburg Decl."), ¶ 2. Because, as EFF noted, many different types of products fall within the umbrella of regulated "surreptitious listening technology" – including different types of hardware, ranging from telecommunications network interception devices to "martini olive" microphone devices, software, and even technology used to *manufacture* these listening devices – the various technologies necessarily operate in many different types of markets. *See, e.g.*, 15 C.F.R. § 742.13 ("Some examples of devices to which these restrictions apply are: the martini olive transmitter; the infinity transmitter; the spike mike; and the disguised microphone appearing as a wristwatch, cufflink, or cigarette pack; etc.").

Without identifying either the products regulated or the markets implicated by these disparate products, Dr. Freedenburg summarily concludes that, while "the market for surreptitious listening devices and technology may encompass a variety of products, the market itself is quite narrow and competition within that market is fierce." Supp. Freedenburg Decl. ¶ 2. Such generic conclusions, however, do not satisfy the agency's burden. *Lion Raisins v. Dep't. of Agric.,* 354 F.3d 1072, 1079

(9th Cir. 2004) (Withholding under Exemption 4 only warranted where "affidavits are detailed enough to allow the court to make an independent assessment of the government's claim.").

Further, and contradicting Defendant's suggestion that the identity of "purchasers in foreign countr[ies]" of surreptitious listening technology is "confidential," Albanese Decl. ¶ 11, Dr. Freedenburg states that these "purchasers . . . are a *well-known*, *defined* population." *Id*. ¶ 2 (emphasis added). If the purchasers are already "well-known" and "defined," there can be no risk that disclosure of the purchasers' identities can cause "substantial competitive injury." *Watkins*, 643 F.3d at 1194. Without more, these types of generic and even contradictory claims fail to demonstrate that the withheld information is "confidential" commercial or financial information. Defendant has thus failed to justify its withholdings under Exemption 4.

B.    <u>Records that Form the Basis for Agency Action Cannot Be Withheld Under Exemption 5</u>

EFF's cross-motion demonstrated that Defendant has likely asserted the deliberative process privilege of Exemption 5 more broadly than the law allows. Pl. Mem. at 26-27. Defendant's arguments in response are unavailing. As EFF noted, even if records are protected by the deliberative process privilege at the time they are created, those records can lose their protection if "adopted, formally or informally, as the agency position on an issue" or if the records are "used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). Defendant responds that, because "export licenses do not incorporate by reference either the BIS license officer's notes or interagency discussions about the applications," the deliberative process privilege still applies. Def. Rep. at 10. But incorporation by reference is only one particular way records can lose the privilege; for example, records can also lose the privilege if they "suppl[ied] the basis for an agency policy actually adopted." *NLRB v. Sears*, 421 U.S. 132, 152 (1975). Thus, those notes or interagency documents that explain the agency position on an export application or form the basis for the agency's ultimate action on an application cannot be withheld in their entirety under Exemption 5.

11

Further, and as Defendant concedes, factual information generally cannot be withheld under the deliberative process privilege. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1998). Facts may only be withheld under the deliberative process privilege if they are so "inextricably intertwined" with deliberative material that their release would reveal the actual deliberations themselves. Def. Rep. at 10. However, nothing in Defendant's affidavits establishes that factual information cannot be segregated and released without revealing any allegedly deliberative information.[7] Thus, to the extent neither Exemptions 3 nor 4 apply to the withheld factual material, Defendant has not satisfied its burden to withhold the information. Consequently, Defendant's claims under Exemption 5 are insufficiently supported to warrant summary judgment.

## III.   DEFENDANT'S FAILURE TO SEARCH FOR RECORDS CONCERNING TECHNOLOGY USED TO "BLOCK COMMUNICATIONS" PREVENTED THE AGENCY FROM CONDUCTING AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

EFF's cross-motion demonstrated that Defendant had failed to conduct an adequate search for all "agency records, created from 2006 to the present, concerning the export of devices, software or technology primarily used to intercept or block communications." Pl. Mem. at 22-23. In particular, EFF showed that Defendant's decision to unilaterally exclude a search for records concerning technology used to "block communications" was improper. Defendant raises a series of unavailing responses, none of which supports Defendant's decision to omit a search for an entire category of requested records.

Defendant first suggests that its decision to exclude a search for records on "blocking" technology was justified because EFF specifically enumerated two categories of information related to technology used to "intercept" communications. The law, however, is in direct conflict with Defendant's position. In *LaCedra v. EOUSA*, 317 F.3d 345 (D.C. Cir. 2003), the plaintiff requested under FOIA "all documents pertaining to" the criminal case against him; the requester

---

[7] As EFF described, *supra* at 8, and in its cross-motion, Pl. Mem. at 20-22, this defect owes to Defendant's broad withholding claims under Exemption 3. That is, because Defendant incorrectly contends all factual information is exempt under Exemption 3, it also contends it need not demonstrate that factual material is inextricably intertwined with its Exemption 5 withholdings.

12

then went on to enumerate certain specific categories of records that fell within the broader, initial category. *Id.* at 346-47. The D.C. Circuit held that the agency improperly construed the request to only include the specifically enumerated categories. *Id.* at 347-49. The court noted that, as is the case here, "[t]he drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof. We think it improbable, however, that a person who wanted only the subset would draft a request that . . . first asks for the full set." *Id.* at 348. Identically, here, EFF requested "*all agency records*, created from 2006 to the present, concerning the export of . . . technology primarily used to *intercept or block communications*[.]" Albanese Decl., Ex. A (emphasis added). Although EFF's request enumerated two specific categories falling within the broader category of requested records, that enumeration does not thereby limit its initial request for "the full set." *LaCedra*, 317 F.3d at 348.

Defendant next suggests that, in the absence of the two enumerated categories, EFF's request would have been "overbroad." Def. Rep. at 13. But an "overbroad" FOIA request is a contradiction in terms: unless subject to one of the Act's nine exemptions, FOIA makes *all* agency records available upon request. *See* 5 U.S.C. § 552(a)(3)(A).  A request could fail to "reasonably describe [the] records" requested, *id.*, or could be "unreasonably burdensome" for the agency to comply with, *see, e.g.*, *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 891–92 (D.C. Cir. 1995), but neither issue is the same as overbreadth.

Finally, EFF's cross-motion showed that Defendant regulates (at least)[8] one category of technology exports for its capacity to "jam" communications, *See* 15 C.F.R. § 774 Suppl. No. 1 (ECCN 5A001.f); and, by failing to locate any records within this category, Defendant failed to

---

[8] While EFF was able to identify one category of exports that appear to concern "blocking" technologies, it is by no means clear that this is the *only* category. Indeed, as the 9th Circuit in *Guo* noted, the export regulations are "complicated" and "putting together the pieces of this regulatory puzzle is not easy." *Guo*, 634 F.3d at 1122-23; *see, e.g.*, 15 C.F.R. § 774 (Supp. No. 1) (2012), *available at* http://www.bis.doc.gov/policiesandregulations-/ear/ccl5_pt1.pdf.  Indeed, the complexity of the regulatory scheme, combined with the difficulty in determining what types of technology are regulated and for what reasons, only further counsels, first, in favor of a more searching and robust *Vaughn* description and, second, in favor of greater public access to the withheld records.

CASE NO.: 12-CV-3683 TEH        REPLY IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR
SUMMARY JUDGMENT

conduct an adequate search. To rationalize its decision to exclude this category of records from its search, Defendant suggests "'jamming' and 'blocking' are technologically distinct." Def. Rep. at 12 (citing Supp. Albanese Decl. ¶ 2). While "jamming" and "blocking" may have different meanings in the context of the export regulations,[9] the terms' common meanings are synonymous. *See, e.g.*, *Merriam-Webster Collegiate Dictionary* (11th ed. 2003) (defining "jam" as "to become blocked or wedged" or "to block passage of: obstruct").[10] Thus, under a reasonable interpretation of EFF's request, agency records concerning technology used to "jam" communications would fall within the category of records concerning technology used to "block communications." But Defendant's obligation goes beyond construing the request reasonably; Defendant is obligated to "construe a FOIA request *liberally*." *Nation Magazine*, 71 F.3d at 890 (emphasis added). Thus, under a liberal construction of the request, Defendant's failure to search for records related to the blocking of communications constituted an inadequate search.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[9] And, indeed, Ms. Albanese provides no authority, beyond the export regulations, for the assertion that "jamming" and "blocking" are "technologically distinct." Albanese Decl. ¶ 2.
[10] *Available at* http://www.merriam-webster.com/dictionary/jam.

14

**CONCLUSION**

Every district court to consider the claims raised by Defendant has agreed: properly construed, Exemption 3 requires a statute to withhold records, and neither the lapsed EAA, IEEPA, executive orders, nor agency regulations satisfy Exemption 3's particular requirements. Thus, FOIA requires that the records at issue in this case must be disclosed.

EFF respectfully urges this Court to reject Defendant's novel claims under Exemption 3; to order Defendant to disclose withheld records (with redactions pursuant to other exemptions, if any); to provide EFF with a document-specific *Vaughn* index describing any withheld portions of records and the reason for their withholding; and to conduct a second search for records responsive to EFF's FOIA request.

DATED:  April 11, 2013                     Respectfully submitted,

                                           By: _/s/ Mark Rumold_____
                                               Mark Rumold
                                               Jennifer Lynch
                                               ELECTRONIC FRONTIER FOUNDATION
                                               815 Eddy Street
                                               San Francisco, CA  94109

                                               Attorneys for Plaintiff
                                               ELECTRONIC FRONTIER FOUNDATION