United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff,

v.

DEPARTMENT OF COMMERCE,

Defendant.

NO. C12-3683 TEH

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case is before the Court on cross-motions for summary judgment. The Plaintiff, Electronic Frontier Foundation ("EFF"), asks the Court to compel the United States Department of Commerce ("Commerce") to release records concerning the export of devices, software, or technology primarily used to intercept or block communications. EFF's request is made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which mandates that agencies of the federal government make all their records available to the public, except for nine categories of material – FOIA's nine "exemptions." In refusing to release the records that EFF has requested, Commerce invokes Exemption 3, which permits agencies to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). At this case's heart is a simple question: does Exemption 3 permit Commerce to withhold information that is exempted from disclosure by an expired statute? Having carefully considered the parties' papers and their oral arguments at the June 10, 2013, hearing, the Court answers this question "no," and grants each party's motion in part for the reasons explained below.[1]

[1] After the replies in this case were filed, EFF filed a motion requesting the Court's leave to file additional materials in support of its motion, as is required under Civil Local Rule 7-3(d). (Document No. 36.) The Court hereby GRANTS EFF's request.

United States District Court
For the Northern District of California

**BACKGROUND**

EFF is a not-for-profit organization that informs policymakers and the general public about technology-related civil liberties issues and defends those liberties. In a May 7, 2012, letter to Commerce's Bureau of Industry and Security ("BIS"), EFF requested records that it believes could shed light on the government's role in facilitating the export of U.S.-made surveillance technology to foreign governments that use the technology to monitor and suppress dissidents and human rights activists. Specifically, EFF requested:

> all agency records, created from 2006 to the present, concerning the export of devices, software, or technology primarily used to intercept or block communications, including:
>
> > 1. All export license applications classified under Export Control Classification Numbers 5A980, 5D980, and 5E980, including any records reflecting those license applications that were granted or denied;
> >
> > 2. All agency guidelines, policies, or analyses reflecting or concerning the types of systems, equipment and components, software, or technology that are "primarily useful for the surreptitious interception of wire, oral, or electronic communications."

(Document No. 20-2, Ex. A.)

In a letter dated June 5, 2012, BIS responded to EFF's request. BIS interpreted EFF's general request for "all agency records, created from 2006 to the present, concerning the export of devices, software, or technology primarily used to intercept or block communications" as comprising the two specific categories of records enumerated in the request. (Document No. 20, at ¶ 8.) With respect to the first category, BIS responded:

> From January 1, 2006 until May 7, 2012, BIS processed 45 applications for Export Control Classification Numbers 5A980, 5D980, and 5E980. No applications were denied and 24 applications were approved. However, your request for license applications has been denied. This information is being withheld under FOIA exemption (b)(3) and is not releasable to the general public.

(Document No. 20-2, Ex. B.) BIS further explained:

> FOIA exemption (b)(3) exempts from disclosure information prohibited from disclosure by another statute if that statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). The statutory provision that specifically exempts this information from disclosure by establishing particular criteria for withholding is Section 12(c) of the Export Administration Act of 1979. . . . Section 12(c)(1) states, in pertinent part, that "information obtained for the purpose of consideration of, or concerning, license applications under this Act shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest."

(Document No. 20-2, Ex. B.)

With respect to the second category of records EFF requested, BIS responded by attaching a portion of the Export Administration Regulations: 15 C.F.R. § 742.13,"Communications Intercepting Devices; Software and Technology for Communications Intercepting Devices." (Document No. 20-2, Ex. B.)

On June 11, 2012, EFF submitted to Commerce an administrative appeal of BIS's response letter. In the appeal, EFF contended that BIS improperly withheld documents, failed to segregate and release information contained in the withheld documents that is not exempt from disclosure, and inadequately searched for responsive records.

Having received no response to its appeal within the FOIA's mandatory twenty working-day period, *see* 5 U.S.C. § 552(a)(6)(A)(ii), EFF filed the complaint in the present action, in which it raises the same arguments presented in its administrative appeal. In keeping with the typical procedure for adjudicating FOIA actions, *see Jones v. Fed. Bureau Investigation*, 41 F.3d 238, 242 (6th Cir. 1994), the parties have now filed cross-motions for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court must draw all reasonable

United States District Court
For the Northern District of California

inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To win summary judgment in a FOIA case, an agency must demonstrate that, drawing all reasonable inferences in the light most favorable to the requester, there is no genuine issue of material fact with regard to the agency's compliance with the FOIA. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

In determining whether a government agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision. *See* 5 U.S.C. § 552(a)(4)(B). The FOIA reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (internal quotation marks and citation omitted). The FOIA's nine exemptions "are limited and must be narrowly construed with doubts resolved in favor of disclosure." *Church of Scientology Intern. v. Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993). Accordingly, when an agency invokes a FOIA exemption to resist disclosure, the agency bears the burden of proving that records have been properly withheld. 5 U.S.C. § 552(a)(4)(B). To sustain this burden, an agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

**DISCUSSION**

Commerce invokes three FOIA exemptions in response to EFF's suit: it relies on Exemption 3 as a basis for withholding all of the records that EFF seeks, and also claims, in the alternative, that it may withhold large portions of the requested records under Exemptions 4 and 5. EFF contends that Commerce may not rely on Exemption 3, and that Commerce has not met its burden to demonstrate that the requested records are subject to withholding under Exemption 4 or Exemption 5. EFF also argues that Commerce's search for responsive

records was inadequate. The Court will first address Commerce's exemption claims, then turn to the adequacy of its search.

**A. FOIA Exemptions**

1. Exemption 3

Exemption 3 permits agencies to withhold materials that are "specifically exempted from disclosure by statute . . . if that statute" either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). To determine whether an agency may withhold records under Exemption 3, a court must consider "whether there is a statute within the scope of Exemption 3" and, if such a statute exists, whether the withheld information "falls within the scope of the statute." *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 801 (9th Cir. 1996) (citing *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 167 (1985)).

Commerce cites to Section 12(c)(1) of the Export Administration Act ("EAA"), 50 U.S.C. app. § 2411(c)(1), as the statutory basis for withholding the requested records under Exemption 3. Section 12(c)(1) provided that "information obtained for the purpose of consideration of, or concerning, license applications under [the EAA] shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest." In *Lessner v. Dep't of Commerce*, the Ninth Circuit held that Section 12(c) was a statute within the scope of Exemption 3. 827 F.2d 1333, 1337 (9th Cir. 1987). EFF does not dispute that the requested export license applications and related records fall within the scope of Section 12(c), and so under *Lessner*, would be subject to withholding under Exemption 3 if the EAA were in effect.

Rather, the dispute in this case centers on the fact that the EAA is expired. The EAA was enacted in its most recent form as a temporary measure in 1979.[2] *See* Pub. L. No. 96-72, 93 Stat. 503 (1979). Since then, the statute has expired several times. Each previous time

[2] The earliest precursor of the EAA was the Export Control Act of 1949, Pub. L. No. 81-11, 63 Stat. 7 (1949).

United States District Court
For the Northern District of California

that the EAA expired, Congress reenacted it, extending its validity for a statutorily delimited period of time. These lapses in the EAA's validity lasted from a few days to six years.[3]

The EAA expired for the last time on August 20, 2001. 50 U.S.C. app. § 2419. In the twelve years since then, various bills have been introduced in committees and in Congress that would revive it.[4] None of these bills has been enacted.

In enacting the EAA, Congress delegated to the executive branch its authority to control the exportation of "dual-use" goods and technologies – those with both civilian and military applications. 50 U.S.C. app. § 2404. The EAA is the primary statutory authority for the Export Administration Regulations ("EAR"), which are administered by BIS. 15 C.F.R. § 730.2.

Since August 20, 2001, the President has maintained the EAR in effect through a series of actions taken under the authority of the International Emergency Economic Powers Act ("IEEPA"), Pub. L. No. 95-223, 91 Stat. 1625 (1977), as amended, 50 U.S.C. §§ 1701-06. The IEEPA provides, in relevant part, that, upon declaration of a "national emergency" with respect to a "unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," the President may "regulate . . . exportation of . . . any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. §§ 1701 & 1702(a)(1)(B).

---

[3] *See, e.g.*, Pub. L. No. 98-207, 97 Stat. 1391 (reauthorizing EAA after seven-week lapse); Pub. L. No. 103-277, 108 Stat. 1407 (reauthorizing EAA after four-day lapse); Pub. L. No. 103-10, 107 Stat. 40 (reauthorizing EAA after three-year lapse); Pub. L. No. 106-508, 114 Stat. 2360 (reauthorizing EAA after four-year lapse).

[4] *See, e.g.*, S.149 (104th Cong., 1st. Sess.) (2001); H.R. 2557 (107th Cong., 1st Sess.) (2001); H.R. 2568 (107th Cong. 1st Sess.) (2001); H.R. 2158 (107th Cong., 2d Sess.) (2001); H.R. 55 (108th Cong., 1st Sess.) (2003); H.R. 4572 (109th Cong., 1st Sess.) (2005); S. 2000 (110th Cong, 1st Sess.) (2007); H.R. 6828 (110th Cong., 2d Sess.) (2008); H.R. 3515 (111th Cong., 1st Sess.) (2009); H.R. 2004 (112th Cong., 1st Sess.) (2011); H.R. 2122 (112th Cong., 1st Sess.) (2011).

On August 17, 2001, three days before the EAA expired, President George W. Bush invoked his powers under the IEEPA to issue Executive Order 13222, which mandates that:

> To the extent permitted by law, the provisions of the Export Administration Act of 1979, as amended, and the provisions for the administration of the Export Administration Act of 1979 shall be carried out under this order so as to continue in full force and effect and amend, as necessary, the export control system heretofore maintained by the Export Administration Regulations issued under the Export Administration Act of 1979, as amended.

66 Fed. Reg. 44025 (Aug. 17, 2001). Executive Order 13222 expired on August 17, 2002, but each year since then, the President has issued a notice maintaining it in effect. Most recently, President Obama issued a notice on August 15, 2012, declaring that "[b]ecause the Export Administration Act has not been renewed by Congress . . . I am continuing for 1 year the national emergency declared in Executive Order 13222." Notice: Continuation of the National Emergency With Respect to Export Control Regulations, 77 Fed. Reg. 49699 (Aug. 15, 2012).[5]

Recognizing that it cannot withhold information under Exemption 3 based on a statute that is no longer in effect, Commerce urges the Court to read Exemption 3's requirement that materials be specifically exempted from disclosure "by statute" to permit withholding based on a "comprehensive legislative scheme" comprised of the expired EAA, the IEEPA, and the series of executive actions taken under the authority of the IEEPA. EFF points out that because the EAA is expired, there is no statute that specifically exempts the requested materials from disclosure. It urges the Court to reject Commerce's attempt to meld a lapsed statute, a statutory grant of executive authority, and a series of executive actions into an Exemption 3 statute.

---

[5] The National Emergencies Act ("NEA") provides that national emergences declared by the President terminate automatically on the one-year anniversary of the day that they are declared unless the President timely publishes a notice in the Federal Register and transmits to Congress a notice continuing the emergency in effect. 50 U.S.C. 1622(d). The Presidential notices extending Executive Order 1322 were issued to comply with the NEA.

United States District Court
For the Northern District of California

Mindful that FOIA exemptions are to be construed narrowly in favor of disclosure, the Court agrees with EFF. Commerce has not shown that there is a statute within the scope of Exemption 3. Executive Order 13222 is not a statute; it is an order by the President that the export control system be continued in effect "[t]o the extent permitted by law." 66 Fed. Reg. 44025 (Aug. 17, 2001). Since the President lacks the power to unilaterally amend acts of Congress, *Clinton v. New York*, 524 U.S. 417, 449 (1998), Executive Order 13222 may not be interpreted as extending the EAA's August 20, 2001, expiration date. *See also Immigration and Naturalization Serv. v. Chadha*, 462 U.S. 919, 954 (1983) (holding that amendment, repeal, and enactment of federal statutes must conform with the bicameralism and presentment requirements of Article I).

The IEEPA – the only statute currently in effect to which Commerce points – is not within Exemption 3's scope. The IEEPA permits the President, upon declaring a national emergency, to regulate exports. *See* 50 U.S.C. §§ 1701(b) & 1702(a)(1) (providing that, upon declaration of a "national emergency" the President may "regulate . . . exportation of . . . any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States"). Nothing in the IEEPA "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . [or] establishes particular criteria for withholding . . . [or] refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Because the IEEPA makes no reference to withholding documents from the public, it cannot be statute within the scope of Exemption 3.

Commerce relies on two cases to support its position that the statutory scheme comprised of section 12(c) of the EAA, the IEEPA, and Executive Order 13222 constitutes a "statute" within the scope of Exemption 3: *Times Publishing Co. v. Department of Commerce*, 236 F.3d 1286 (11th Cir. 2001) and *Wisconsin Project v. Department of Commerce*, 317 F.3d 275 (D.C. Cir. 2003). Both cases involved FOIA requests made in 1999, during the EAA's most recent lapse, which lasted from 1994 to 2000, and both courts held that Commerce had properly relied on the EAA to withhold documents pursuant to

Exemption 3 during the lapse. But there is one critical distinction between the present case and *Times Publishing* and *Wisconsin Project*: on November 13, 2000, while both cases were pending, Congress enacted the Export Administration Modification and Clarification Act, Pub. L. No. 106-508 (Nov. 13, 2000) ("EAMCA"), which extended the EAA's expiration date to August 30, 2001.

Congress enacted the EAMCA in response the district court order in the *Times Publishing* case, which held, as this Court holds today, that the expired EAA did not qualify as an Exemption 3 statute and "an 'executive order' simply is not a 'statute' and therefore, does not satisfy the requirements of Exemption 3." *Times Publishing Co. v. Dept. of Commerce*, 104 F. Supp. 2d 1361, 1363 (M.D. Fla. 2000). *See* 146 Cong. Rec. H11575 (Oct. 30, 2000) (Rep. Barbara Lee pointing out that the *Times Publishing* decision had called into question whether the government could "hide behind emergency powers to revive an expired law"); *id*. (Rep. Ileana Ros-Lehtinen observing that by "operating under the [IEEPA]" the government was "rendering itself vulnerable to legal challenges"); 146 Cong. Rec. H8021 (Rep. Benjamin Gilman noting that "the Department is . . . currently defending against two separate lawsuits seeking public release of export licensing information").

The legislative history of the EAMCA demonstrates that Congress understood and intended that the bill would extend the validity of the EAA through August 30, 2001, and that after that date, Commerce would not be able to rely on Exemption 3 to withhold information protected from disclosure by Section 12(c). The EAMCA's sponsor, Congressman Benjamin Gilman, characterized the Act as "a simple extension of the Export Administration Act through August 20, 2001." 146 Cong. Rec. H11576 (Oct. 30, 2000).[6] Senator Lindsay Gramm stated that "replacing the 1994 expiration date with a 2001 expiration date will make clear that [Commerce's] authority to apply the 12(c) confidentiality provision of the 1979 act

[6] Congressman Gilman expressed his opinion that the text of the EAMCA was not clear as to whether the Act retroactively provided Commerce the authority to keep licensing information obtained between 1994 and 2000 confidential, stating "Congress is leaving to the Courts the question whether, or to what extent, the provisions of the Export Administration Act of 1979 were extended by authorities granted under IEEPA after the expiration of the EAA in 1994." 146 Cong. Rec. H11576 (Oct. 30, 2000).

is to be considered as covering any information regarding license applications obtained during that time period, as if there had been no interruption of authority" pending "a comprehensive review of the Export Administration Act," which would be "early on the agenda of the Senate Banking Committee next year." 146 Cong. Rec. S11365 (Oct. 30, 2000). *See also* 146 Cong. Rec. H11575 (Oct. 30, 2000) (Rep. Barbara Lee urging the passage of the EAMCA to ensure that "Commerce will be able to rely on the Export Administration Act to protect the confidentiality of the relevant documents received since 1994, as well as the documents that the commerce department receives between now and August 20 of next year"); *id.* (Rep. Doug Bereuter stating that by permitting the Department of Commerce "to protect licensing information from the date of enactment through August 20, 2001," the Act provided "much-needed stopgap authority").

Reviewing the district court's decision in *Times Publishing* after the enactment of the EAMCA, the Eleventh Circuit held that Commerce had properly invoked Exemption 3 based on the EAA during the lapse. *Times Publishing*, 236 F.3d at 1291. Observing that "Congressional intent to maintain the confidentiality of government information is the cornerstone of Exemption 3," the court concluded that the fact that Congress had "renewed the EAA of 1979 through August 20, 2001 . . . specifically demonstrated Congress' intent to preserve the confidentiality of the precise export license information sought in this case pursuant to executive order during periods of lapse." *Id.* at 1291-92. In light of "Congress' clear expression of its intent to protect the confidentiality of the requested export licensing information" by enacting the EAMCA to extend the EAA's expiration date, and of the fact that the EAR had been maintained in effect by executive order during the lapse, the court reasoned that an "overly technical and formalistic reading of FOIA to disclose information clearly intended to be confidential" would deprive Exemption 3 of "meaningful reach and application." *Id*. On this basis, it held that Commerce had properly invoked Section 12(c) of the EAA to maintain the confidentiality of export licensing information during the 1994 to 2000 lapse. *Id*. at 1292.

United States District Court
For the Northern District of California

The court in *Wisconsin Project* similarly relied, in part, on the legislative history of the EAMCA in determining that the EAA protected the confidentiality of materials generated during the lapse, observing that "[t]he legislative history indicates that Congress intended to preserve [the EAA's] confidentiality protections when it renewed the EAA in November 2000." 317 F.3d at 282. However, in response to the plaintiff's contention that the EAMCA was not retroactive, the court held that the reenactment simply "confirmed, with respect to confidentiality, what has been the case all along," because "the IEEPA qualifies as an Exemption 3 statute." *Id*. at 284-85. For the reasons explained above, this is simply incorrect – as Judge Randolph observed in dissent, "[t]he [IEEPA], which does not itself exempt anything from disclosure, [] flatly fails to qualify as an Exemption 3 'statute.'" *Id*. at 285.

Because the EAA is expired, the IEEPA is not an Exemption 3 statute, and Executive Order 13222 is not a statute, Commerce cannot rely on Exemption 3 to withhold materials responsive to EFF's request.

2. Exemptions 4 and 5

Commerce contends that portions of the responsive records are subject to withholding under FOIA Exemptions 4 and 5, which, respectively, permit the withholding of "trade secrets and commercial or financial information obtained from a person and privileged or confidential," and "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(4) & (5). EFF points out that because Commerce has withheld all of the requested records under Exemption 3, it has not segregated and released the portions of the responsive records that are not exempt. EFF requests that the Court direct Commerce to reprocess its FOIA request, release the portions of the responsive documents that are not subject to withholding, and provide a detailed and particularized description of the withheld records and its reasons for withholding them.

The parties' dispute with respect to Exemptions 4 and 5 centers on how the withheld documents are best characterized. Commerce contends that much of the information

contained in the export license applications is commercial and confidential (Exemption 4), and that many of the notes and communications about the export license applications are of a type that are protected by the deliberative process privilege (Exemption 5). "Where there is . . . a factual dispute over the nature of the information sought in a FOIA suit, the lack of access of the party seeking disclosure undercuts the traditional adversarial theory of judicial dispute resolution." *Mead Data Cent., Inc. v. Dept. of Air Force*, 566 F.2d 242, 250 (D.C. Cir. 1977). This is because "[t]he party requesting disclosure must rely on his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments." *Weiner v. Federal Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir. 1991).

In such cases, courts "require that when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead*, 566 F.2d at 251. The agency may satisfy its burden by way of affidavits, but the court, in considering the affidavits, "may not rely upon conclusory and generalized allegations of exemptions." *Church of Scientology*, 611 F.2d at 742. The agency's affidavits must contain "reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lewis v. Internal Revenue Serv.*, 823 F.2d 375, 378 (9th Cir. 1987). This is typically accomplished through a "*Vaughn* index," a document that identifies each item of information withheld and the corresponding FOIA exemption claimed, and provides a "particularized explanation" of how disclosure of the information or document withheld would "damage the interest protected by the claimed exemption." *Weiner*, 943 F.2d at 977; *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973); *King v. Dept. of Justice*, 830 F.2d 201, 221 (D.C. Cir. 1987).

Commerce has not provided a *Vaughn* index in this case. Instead, it relies on two declarations to justify withholding the requested information under Exemptions 4 and 5, the first from Eilen Albanese, the BIS official who spearheaded the search for records responsive to EFF's request, and the second from Paul Freedenberg, the chairman of a trade association

of exporters of controlled goods. As elaborated below, these declarations do not provide enough detail about the nature of the information contained in the withheld documents and Commerce's rationale for withholding them to permit EFF or the Court to assess Commerce's arguments under Exemptions 4 and 5.

a. Exemption 4

To be subject to withholding under Exemption 4, information must be "commercial or financial" and "confidential." 5 U.S.C. § 552(b)(4). The terms "'commercial or financial' are given their ordinary meanings." *Watkins v. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1194 (9th Cir. 2011). Information is "confidential" for purposes of Exemption 4 if its disclosure would be likely "'(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Frazee v. Forest Serv.*, 97 F.3d 367, 371 (9th Cir. 1996) (quoting *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)).

Commerce asserts that information ranging from the "name of the exporter," to the description of the proposed "end use" of the item to be exported, to "supplemental documents" is subject to withholding under Exemption 4, but has provided no descriptions of the specific contents of the 45 export license applications that have been withheld. In her declaration in support of Commerce's motion, Albanese states that the disclosure of the withheld information – in the abstract, without reference to any particular export license application – would "impair the Government's ability to obtain necessary information in the future" by making applicants wary of providing information to BIS out of fear that the information might be publicly disclosed. (Document No. 20-2, at ¶¶ 42-44.) However, the export control regulations require exporters to submit export license applications, and if an application does not contain sufficient information for BIS to make a determination with respect to it, BIS may request more information or deny the application. *See* 15 C.F.R. § 750. Because would-be exporters have no choice but to submit the requested information, disclosure would be unlikely, as a general matter, to impair the government's ability to obtain

the information necessary to adjudicate applications in the future. *See Nat'l Parks*, 498 F.2d at 770.

Similarly, it is not possible to determine based on the Albanese and Freedenberg declarations that the disclosure of any of the withheld information would result in substantial harm to the competitive position of all of the applicants. Albanese states that the disclosure of the information in the export license application files would be "likely to cause substantial harm to the competitive position of the company from whom the information was obtained" because competitors could exploit the information to identify customers and undercut prices. (Document No. 20-2, at ¶ 41.) Such "[c]onclusory and generalized allegations of substantial competitive harm . . . are unacceptable and cannot support an agency's decision to withhold requested documents." *Pub. Citizen Health Research Grp.*, 704 F.2d 1280, 1291 (9th Cir. 1983). Commerce's submission of the Freedenberg declaration does not cure this deficiency with respect to any of the withheld information – the declaration establishes only that the market for surreptitious listening devices and technology "is quite narrow and competition within that market is fierce." (Document No. 25-2, at ¶ 2.) Without information about the market for each type of technology that is the subject of a withheld license application, it is not possible to discern whether the disclosure of any particular application, much less any particular piece of information contained within an application, would cause competitive harm to the applicant.

Finally, information that already has been disclosed by an export license applicant or by Commerce is, by definition, not "confidential." *See Watkins*, 643 F.3d at 1196 (holding that agency waived the confidentiality of information by disclosing it without limits on future dissemination); *Green v. Dep't of Commerce*, 468 F. Supp. 691, 694 (D.D.C. 1979) (holding that defendant had not shown that disclosure would cause substantial competitive harm because some information already had been disclosed). Without more detailed information about the contents of the withheld export license applications, it is not possible for the Court to determine whether any of the material they contain already has been disclosed.

b. Exemption 5

Likewise, more information is necessary for the Court to determine whether Commerce has properly invoked Exemption 5 to justify withholding all of the BIS license officers' notes and communications. To justify withholding of records under Exemption 5, an agency must establish that the withheld records are "predecisional," meaning "generated before the adoption of an agency policy" and "deliberative," meaning they "reflect[] the give-and-take of the consultative process." *Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks and citation omitted). While it seems likely that many of the withheld notes and discussions would meet this standard, in the absence of any specific information about the notes and communications that Commerce has withheld subject to Exemption 5, it is not possible to determine whether the privilege has been properly invoked.

"The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead*, 566 F.2d at 260. Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Id.* With respect to Exemption 5, as a general rule, "factual material must be disclosed but advisory material, containing opinions and recommendations, may be withheld." *Id.* at 256. Moreover, records that supply the basis for an agency position that has been adopted or are used in dealings with the public are not subject to withholding under Exemption 5. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975); *Costal States Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980).

Commerce acknowledges that the withheld notes and communications might contain material that is not exempt, but asserts that to the extent that they do, that material is subject to withholding under Exemption 3 or Exemption 4. Because the Court has held that Commerce cannot rely on Exemption 3, and Commerce has not adequately demonstrated that the requested notes and communications are subject to withholding under Exemption 4, this argument is unavailing.

United States District Court
For the Northern District of California

Without partially released records and more tailored descriptions of Commerce's reasons for withholding the information that has been withheld, it is not possible to discern whether each document and item of information Commerce has refused to release is subject to withholding under Exemption 4 or Exemption 5.

Because the expired EAA is not an Exemption 3 statute, and because the Albanese and Freedenburg declarations are insufficient to show that all of the information contained in the records Commerce has withheld is subject to withholding under Exemption 4 or Exemption 5, EFF's motion is GRANTED and Commerce's motion is DENIED. The Court will direct Commerce to reprocess EFF's FOIA request and provide EFF with a *Vaughn* index.

**B. Adequacy of Commerce's Search**

EFF argues that Commerce's interpretation of its FOIA request was impermissibly narrow because it did not search for agency records concerning the export of devices, software, or technology primarily used to block communications, as opposed to intercept them. In a declaration in support of Commerce's summary judgment motion, Albanese describes her interpretation of EFF's FOIA request as follows:

> I interpreted [EFF's] general request for "all agency records created from 2006 to the present, concerning the export of devices, software, or technology primarily used to intercept or block communications" to constitute the two categories outlined in plaintiff's request, namely: "All export license applications classified under Export control classification Numbers 5A980, 5D980, and 5E980, including any records reflecting those license applications that were granted or denied" . . . and "All agency guidelines, policies or analyses reflecting or concerning the types of systems, equipment and components, software, or technology that are 'primarily useful for the surreptitious interception of wire, oral, or electronic communications.'"

(Document No. 20-2, at ¶ 8.)

Agencies are required to construe FOIA requests liberally in favor of disclosure, *Julian v. Dept. of Justice*, 806 F.2d 1411, 1416 (9th Cir. 1986), and grant "any request for records which . . . reasonably describes such records," subject to the FOIA's nine exemptions. 5 U.S.C. § 552(a)(3)(A). Accordingly, to prevail on summary judgment, an

agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (internal quotation marks and citation omitted). This showing may be made by "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id*. (internal quotation marks and citation omitted).

The fact that EFF specified two categories of information in which it had a particular interest does not relieve Commerce of its obligation to conduct a search for the presumably broader set of records falling within EFF's general request. *See LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) ("The drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof.").

Nevertheless, BIS has demonstrated that its search was reasonably calculated to uncover responsive documents. Albanese explains that "BIS does not control exports for their blocking capabilities." (Document No. 20-2, at ¶ 8.) EFF has not suggested that it does. Rather, EFF contends that BIS's search should have encompassed export license applications classified under Export Control Classification Numbers ("ECCN") 5A001.i and 5A001.f, neither of which regulates items for their blocking capabilities.

ECCN 5A001.i regulates items based on their interception capabilities – it applies to "[s]ystems or equipment specially designed or modified to intercept and process the air interface of 'mobile telecommunications' and specially designed components therefor." 15 C.F.R. § 774, Supp. 1. ECCN 5A001.i was added as a separate category of regulated exports only after EFF submitted its FOIA request, and the records now categorized under 5A001.i were formerly regulated under 5A980, one of the categories EFF specifically designated in its FOIA request, and which Albanese used in conducting her search for records responsive to EFF's request. (Document Nos. 25-1, at ¶ 3 & 20-2, at ¶¶ 10, 15.) Accordingly, BIS's failure to search under ECCN 5A001.i does not render its search inadequate.

ECCN 5A001.f regulates:

> Jamming equipment specially designed or modified to intentionally and selectively interfere with, deny, inhibit, degrade or seduce mobile telecommunication services and performing any of the following:
>
> > [a.] Simulate the functions of Radio Access Network (RAN) equipment;
> >
> > [b.] Detect and exploit specific characteristics of the mobile telecommunications protocol employed (e.g., GSM); or
> >
> > [c.] Exploit specific characteristics of the mobile telecommunications protocol employed (e.g., GSM).

In a supplemental declaration, Albanese explained why a search under ECCN 5A001.f would not be responsive to EFF's request for items "primarily used to intercept or block communications":

> Typically, "jamming" involves emitting an electronic signal that interferes with other communications being sent on the same frequency (for example, a jamming signal may be used during an official motorcade to prevent any potential explosive devices form being detonated via cell phone). "Blocking," as the term is generally used when speaking of communications, does not involve simulating the functions of Radio Access Network (RAN) equipment or detecting and exploiting specific characteristics of the mobile telecommunications protocol employed. Rather, blocking is a selective process that entails identifying and obstructing transmissions from a particular source while allowing others to pass through (examples include filtering out emails from a particular sender or preventing access to a particular website). Because "jamming" and "blocking" are technologically distinct, I did not consider 5A001.f to be responsive to [EFF's] request for records.

(Document No. 25-1, at ¶ 2.) Albanese's supplemental declaration demonstrates that Commerce's construction of EFF's FOIA request as not encompassing ECCN 5A001.f was reasonable. While agencies should work with FOIA requesters to define the parameters of their requests, FOIA requesters must phrase their requests with sufficient particularity to enable the agency conducting the search to determine what records are being requested. 5 U.S.C. § 552(a)(3)(A). Litigation is not an appropriate forum for expanding the scope of a FOIA request or hashing out the scope of an ambiguous one.

Albanese's declarations adequately demonstrate that Commerce does not regulate items for their "blocking" capabilities and accordingly, that BIS's search for records was "reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986. Commerce's motion for summary judgment is GRANTED with respect to the adequacy of its search.

**CONCLUSION**

For the reasons given above, EFF's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART and Commerce's motion for summary judgment likewise is GRANTED IN PART and DENIED IN PART. Accordingly, it is hereby ORDERED that on or before **August 9, 2013** Commerce shall:

1. Reprocess EFF's FOIA request and release to EFF all non-exempt portions of requested agency records. Should Commerce elect to withhold portions of responsive records under a FOIA exemption other than Exemption 3, Commerce shall provide EFF with a *Vaughn* index containing a particularized description of each document or portion of a document that Commerce has withheld and explaining the reasons for nondisclosure in terms of the elements of the FOIA exemption or exemptions invoked;

2. File with the Court and serve on EFF's counsel an affidavit or declaration attesting to and detailing Commerce's compliance with this Order.

**IT IS SO ORDERED.**

Dated: 07/12/2013

**THELTON E. HENDERSON, JUDGE**
**UNITED STATES DISTRICT COURT**